May it please the court, Michael Satchers on behalf of Lee Heisman. And if I may, I'll reserve ten minutes for rebuttal. Sure. Thank you. The jury that condemned Lee Heisman to death never got to know him. They didn't have any clue as to the catastrophic series of traumas that he suffered literally from the time of his birth to his maturity fundamentally shaped him and contributed to his criminal conduct. They didn't learn that his criminal violence towards women culminating in the capital offense was not a product of his inhumanity, which is what the prosecutor argued in the story the prosecutor told, but was a product of his very humanity. Could you address one question that I have? He was on trial for premeditated murder and the history of his childhood abuse really was more focused on How do you make the connection between the absence of the assuming, and there's some steps I think you have to get over. One is that there was inadequate investigation. Two, that had they contacted or retained Dr. Berg, Berg would have unearthed this buried or repressed or whatever we want to call it horrific childhood abuse. And then finally, and the point I'm now getting to is on the prejudice side, is what's the relationship between the sexual abuse and the like and the crime of conviction? Well, I think you're correct, Your Honor, in the sense of very clearly the domain of his greatest injury, which is the way the expert put it, Dr. Lebowitz, related directly then to his sexual criminal violence against women and that was explained. But it's not required, typically, you don't even find that kind of direct immediate causal relationship as you had in this case in terms of the sexual violence against women, which was a tremendous amount of the aggravating case against Mr. Heishman. But the courts have never required, in fact, it's been just the opposite, to show reduced culpability for violent criminal action, the kind of direct correlation that you're talking about. All of the experts did say that it fundamentally shaped his behaviors and his criminality, including the violent action that he took. against Nancy Legassi to ultimately kill her. It's an outgrowth of his sexual violence against women, which was so controlled or a product of his own sexual traumas. But the literature is broad that, generally speaking, child abuse that you suffer, your traumatic upbringings, will lead to a manifestation of violence against women. And that's not a case where you can't have violence in one way or another. I mean, there was tremendous anger in Mr. Heishman that had built up by the way that he had been treated his whole life. He was completely maladjusted from that. And so it led to the kind of homicidal conduct that will often occur to a damaged individual. Let me ask you this, Mr. Cetras. As I understand it, Heishman is the only living witness to the sexual abuse. Is that true? Right. The sexual... Right. Okay. And did he testify at the evidentiary hearing? No, he didn't. Did he submit a declaration that these things happened? No, because... Was there an offer of proof by counsel that he would testify to various things? There was never a need to present him to know. Well, I don't understand how we establish that this, in fact, happened, you know, as a factual matter. Well, because all the other evidence was admitted by stipulation without an objection in terms of... Well, they said this is what he told me. Right. Which is not admissible except to support the opinion. I mean, it's not proof of the truth of the matter asserted. It was in the evidentiary hearing. There was no hearsay objection to any of it. If need be... It wasn't admitted as 703 material? No, just to inform the opinion of the expert. They expressed the opinion that he had post-traumatic stress disorder, and they base it on these things. Right. But none of the experts... How was Mr. Heishman excused from having to get up and testify that this happened? Because it was never made an issue at the evidentiary hearing. Everybody accepted the fact that this sexual trauma that he suffered was true. The experts found it compelling. The State's expert found that he suffered from all of the attributes or symptoms that one would suffer if they had been exposed and experienced... Following up on Judge Silverman's question, you are, of course, talking about what happened at the time of the evidentiary hearing. But at the time of the penalty phase, which was in 1980, as I understand it, Mr. Heishman not only did not tell anybody, but he admitted in 1990 that he had not told anybody until the very moment that he disclosed it after eight sessions with the psychologist or psychiatrist at that point. And Judge Walker cited Anderson v. Calderon, one of our opinions, 2000, to the effect that holding counsel's investigation inadequate if petitioner and others aware of the alleged abuse withheld information from counsel. So what role, if any, does Anderson play in our deliberation? Anderson doesn't play any role because in Anderson they actually pursued and investigated and talked to the people and sought to elicit. In our case, there was no withholding by anybody. Wait, wait, wait, wait, wait, wait. Are you telling me that your client disclosed this to his counsel? No, but I'm saying he did not withhold it. Ultimately, this all traces down to an IAC claim, basically. Correct. And so the question is, in 1980, what did the lawyers do that was wrong under the standard that existed at that time in a circumstance where Mr. Heisman, by his own admission, had never told anybody about this? He didn't even admit the physical violence and the emotional abuse until after five sessions with the psychologist. So far as the record was concerned, the Atascadero records, everything, there was nothing wrong. There was nothing to find wrong. There was nothing more to investigate. So why should that be ineffective assistance of counsel? Are the lawyers supposed to be mind readers? Do they have some kind of Luke Skywalker ability to just read people's minds and they're supposed to know this? Well, the most fundamental defect in the representation was when their psychiatric consultant, Dr. Winnig, who they hired to act to give him advice, to give them advice on consultation on how to proceed from the psychological end. He was never even going to be a witness because he had had bad witness experience. So he's there to advise and consult. Tells counsel, you need to go get this man psychologically tested and evaluated. Let's look at what he actually said. At least this is according to the notes. Spoke with Dr. Winnig. He finds, referring to Heisman, evasive but can give us nothing rein mitigation. So this is the guy you're relying upon, says, I can't help you with this guy. Suggests Heisman is an aggressive type rapist and doesn't find murder of a rape victim at all out of character. And then almost as an aside, he suggests we get psychological evaluation and suggests Paul Berg or Erica Myers. Jenner says okay. So later on we find out that Dr. Berg, who says he might have been able to do something there, admits that he may not have gotten anything either. It took the psychologist that ultimately got the information, I think it was eight sessions, over a period of about six weeks to get this information. And by that point his grandmother had died. And he had basically said before as part of this that he would not say anything about this until his grandmother died because he was afraid it would embarrass her. How is it reasonable under the Strickland standard for us to believe that there is prejudice here? All right. Because, first of all, Winig is saying he's evasive. He's not coming up with readily available information. So you should have him psychologically tested. It wasn't even a psychologist who discovered after six, seven, eight sessions the life history, including sexual trauma. It was a mitigation investigator. Let's assume that he should have had a psychological exam based on Winig's suggestion. Judge Walker found as a fact that Heishman would not have revealed this information to Berg at that time. Why is that finding clearly erroneous? It's clearly erroneous because of the evidence that was presented that showed there was at least a reasonable probability, if not greater. It may be that Dr. Berg – We're just disagreeing with this. I mean, that's not why it's – you're not telling me why it's clearly erroneous. You're just giving another argument. He says these are the reasons why I don't think he would have revealed it. It wasn't in a therapeutic setting. It was men don't reveal this stuff. You know as well as I all the reasons he gave why he said it wouldn't have been revealed. Why is that clearly erroneous? Because those are all the kind of obstacles that faced a general capital defense attorney that is investigating the traumatic history of their client. They're not going to readily just open it up. You have to approach in a therapeutic way or in a professional way, let's say, in exactly the kind of way that the mitigation investigator did approach ten years later. And that's the best evidence that there's a probability, if not greater than a probability, that Mr. Heisman would have disclosed if approached in the professional manner that was required by – Why doesn't the evidence suggest that Heisman chose not to reveal it if indeed it happened until after all his appeals in the State court had expired and he's getting closer and closer to being executed? Because nobody did not choose to reveal it until then? Yeah. He sat on this for ten years. He sat on it for ten years because nobody's asking him about it, though. Well, no, that's not true. We have a handwritten document that he says, I basically had a happy childhood and they treated me better than I deserved, or words to that effect. Yes, but we have so – Not that he wasn't asked. Yeah, he says, yeah, they treated me just like my sister did. Okay, so let's not say he wasn't asked. He was asked. Well, no, he was not asked in those ten years. That handwritten document I think you're talking about is an earlier probation report before he was ever charged in this case. Yes. So that's the story he's telling. He also told the parole officer he had not been abused. Again, early on, yes, before he was ever charged. I understand that, but to Judge Silverman's point, he had, you know, he's apparently pretty knowledgeable in a number of things. He holds this for all these years. Everything else is exhausted and now he comes up with a story, which may or may not be true. But if you look at the Tascadero record, if you look at what he said at the parole, I realize it's not a psychological evaluation, but everywhere you look until 1990, there is no evidence of this, none. I mean, I realize we can all paint a retroactive picture and say, well, if you just look here, you have a clue about this and a clue about that. But that's not what Strickland requires. Strickland says that to show prejudice, the petitioner must show that there is a reasonable probability that but for the counsel's unprofessional errors, the results of the proceeding would have been different. Reasonable probability. How do you factor that if there is nothing in the record? And Judge Walker talked about this repeatedly. There was simply nothing in the record to indicate there was any problem at the time of the trial. There just wasn't. That's not according to Dr. Berg, who was the very expert. Dr. Berg never spoke to your client. As far as I know, he's never spoken to him to this day, has he? No, but you didn't need to speak to him to see that there were red flags in the record that should have alerted. Is he like the guy that's psychoanalyzing Thomas Jefferson 200 years after the fact because he did this and he did that and the other and therefore you understand him? Is that what we're talking about? No. He does not ever offer an opinion about Mr. Heisman's psychiatric condition. We have that done by all the experts, including the state ones, that say he is severely damaged from childhood trauma and it fundamentally affected his behavior. But I'm going back to Dr. Berg because he, looking at the records that were before trial counsel at the time, found a number of red flags that instantly would have alerted him to be on the lookout and to be open for sexual trauma. Well, that gets to the tactical issue. I realize you disagree with this, but Judge Walker found that because of the, the issue of putting before the jury the fact that he might be a mentally disturbed sex offender, that they did not want to get a psychological testimony. And I know there are arguments both ways, but do you agree that if there was a tactical decision on the part of the lawyers to do this, whether or not they were correct, as long as they had something to go on. Well, as long as it's reasonably based and fully informed. First of all, that was not a tactical decision that was made. What the trial counsel said was I didn't engage Dr. Berg pursuant to the advice, because I didn't know about it. If I had known that he had advised that, I would have done that in a hot minute. There would be no reason not to. And he never went back to saying I made a strategic decision not to. He never made a conscious decision not to hire the doctor. And, you know, I'm not clear if it would have been even reasonable. He said I wasn't going to bring out on its own that he was a mentally disordered sex offender, but I'm not clear what the great harm would have been. It just reinforces in the mind of the jury that this is an incorrigible guy who hurts people. That was reinforced during the aggravation case. But the mentally disordered part was not. Do you recall? Your point. Sorry. I've got the water down the wrong way. I'm coughing a little bit, too. The as I understand the theory is that there was this bombshell hidden in his past. It was not contested or is not, as I understand on appeal, the state doesn't contest that he actually suffered these problems and that he has PTSD. So the question is did the lawyers act reasonably in carrying on whatever investigation they did and fail to uncover this, I'm going to call it a bombshell, just to isolate it. And your argument is it wasn't a tactical decision because they didn't invoke the knowledge of Dr. Berg. As I indicated at the outset, there is this hurdle of whether he could have, in fact, elicited it, assuming it did happen. But your position is it isn't tactical. It was not a tactical decision. Because you don't make a tactical decision. I think the Supreme Court cases are clear on this. Tactical decisions made without thorough investigation are not fully informed. Yes, but it wasn't even under the rubric or or. Because they didn't make a tactical decision. Yes, they didn't make the decision based on strategy to begin with. It was, it fell through the cracks because this was happening on the day of trial. Counsel's already fully involved in the trial, apparently not paying any attention. And that takes us back to Judge Walker's finding that even assuming they should have had him psychologically examined, there's no harm, no foul, because they wouldn't have gotten it out of him anyway. Right, that there's no chance, no reasonable chance. So for us to side with you, we have to find that finding clearly erroneous. Yes, yes, you do. Or at least, I'm not clear whether it may perhaps be a mixed question of law. In fact, I mean, ultimately it's a finding of a lack of prejudice. That's a legal conclusion. The finding that Dr. Berg or anybody else would not have been able to elicit this from him in 1980 is a factual finding. Okay, that's clearly erroneous. And do you agree, do you agree that whether the petitioner would have revealed his sexual abuse in 1980 is purely speculative? Well, on one level, it's always a yes one way or the other. But that's why we talk about probabilities and there's no certainties. It sure would be a stronger case for you if Dr. Berg had met the guy once. I mean, now he's saying what he would or would not have been able to elicit from him without even having ever met him. But. I mean, what kind of, you know, that doesn't really strengthen the opinion. It was elicited by somebody. It was already elicited. Right, 10 years later while the guy's on death row and his appeal had just been expired. The argument is his position of what he would have done at that time in 1980 would be contaminated because now he's already interviewed and learned more than he would have learned at the time. So we had him, we had other experts who had evaluated Mr. Heisman. Of course, where Mr. Heisman had already disclosed the bombshell or whatever. And, of course, it's easy then to say, well, they spoke to him and came out. So Berg is in the position where he knows no more than he would have known at the time the referral was made to him. And he's looking at the same documents he would have looked at and he says, it's jumping out at me. And I had this protocol back in 1980 where I was very alert to potential sexual abuse of a child. It was in my protocol. I would not have missed it. And there's all these red flags in the paperwork. When you look at it, you have number one, the compulsive nature of the sexual criminality right there for him would have set off a flag. And then you have all of these, you have the psychological descriptions of him back in 1978 by Dr. Kuykendall before PTSD, where he's describing these symptoms that are just the equivalent of the PTSD. You mentioned you wanted to reserve some time. You're welcome to keep going or to reserve it as you prefer. I will reserve it. Thank you. Thank you, Mr. Simmons. Good morning. Good morning. May it please the Court. As this Court has said in Allen v. Your name for the record, please. Yes, Your Honor. Glenn Pruden, Supervising Deputy Attorney General. Thank you, Mr. Pruden. As this Court said in Allen v. Woodford, the killing of a witness strikes the greatest blow possible on our criminal justice system. And I think that fact permeates this case. I'd like to go directly to Dr. Berg and the questions that this panel has asked. I think it's important to note that Dr. Berg, coming into this case, before he looked at anything, knew that Mr. Heisman had disclosed to Melody Irmerchild, the investigator for appellate counsel, about his sexual abuse. So essentially, the well was poisoned, if you will, Dr. Berg coming in. He knew what to look for. I think also that it's important to keep in mind that Judge Walker had an opportunity to see Dr. Berg as he testified on the stand and clearly did not credit what Dr. Berg said about his abilities to tease or to coax out of Mr. Heisman anything about this alleged sexual abuse or physical abuse that he suffered. Speaking of alleged sexual abuse, Mr. Sattras says that this material or the statements made by Heisman to these investigators were received for the truth of the matter asserted. Is that correct? We have never conceded to that. And in our briefing to the district court, as well as in our briefing to this court, we have constantly maintained that in order to establish any type of sexual abuse that Mr. Heisman would have had to testify, which was essentially Your Honor's point in some of the questioning to Mr. Sattras. And that's the way it would be under California law. And I think any reasonable district attorney would have made an objection to any attempt by trial counsel to argue that Mr. Heisman had been sexually abused simply based on the opinion of a mental health expert. It doesn't mean that mental health expert testimony would not come in or be admissible, that they could render an opinion that would, you know, to the reasonable degree of psychological certainty, I believe that this abuse occurred. But as Your Honor correctly pointed out in your questioning, that does not establish the fact. And so that leads to the point that if the State's position on appeal, that we should treat this as a fictional story on his part and reject it because it hasn't been established as a fact? Or are you arguing that you're not your own experts, as I understand it, concluded that Heisman did in fact suffer PTSD and did not doubt the fact of his having been abused by his grandfather? Am I mistaken in that? No, Your Honor, you are not mistaken. Dr. Martel did render an opinion that Mr. Heisman exhibited all the signs of someone who had been sexually abused. But that is not the same as saying, yes, in point of fact, he was sexually abused. It is a small distinction in terms of the weight. Well, it may be, but I'm just trying to understand. You seem to be arguing and taking the position that because Heisman didn't testify at the evidentiary hearing, somehow we should be not treating his allegation of what this so-called bombshell is as really being there. Now, either it is or it isn't, if it's a threshold question. But I didn't read Judge Walker as saying, well, this is all hypothetical, because he hasn't established his own, you know, the factual predicate for there being anything there. I thought all of the debate is on whether or not it would have been uncovered and whether or not they were reasonable in approaching it and whether ultimately it was prejudice. So what is it? I think it just simply goes to the weight of the evidence of whether or not there was sexual abuse. The jury certainly could have come to the conclusion, based on what the doctors had testified, that Mr. Heisman was sexually abused. And I would submit that perhaps they would have come to that conclusion based on it. However, I don't think we're going to do that. All right. So what we're really talking about in this courtroom today, as I understand it, is assuming that he did suffer this horrific abuse by his grandfather. And then the question we proceed to is what Judge Walker ruled on, is whether or not it was ineffective assistance to conduct the kind of investigation they did, that they would not – his finding that they would not have – Berg wouldn't have elicited this, and that even if he did and even if all this was put before the jury, there would have been no prejudice. Is that what we're talking about? Yes, Your Honor. I would not quibble with that at all. Thank you. Insofar as – Now that I've – I know I've thrown you off a little bit, but I lost my own train of thought. What about Judge Walker's opinion do you cite for the proposition that Dr. Berg would not have uncovered this? There are several facts in the record, Your Honor. Number one, and I think the most important thing, is that Mr. Heisman was very clear that he was of a mind to protect his maternal grandmother. There was obviously a very strong emotional family bond with her, and he did not want her to suffer with the knowledge of the horrific facts, if you will, of the sexual abuse that he said that he had suffered. And it would be – it doesn't matter in the grand scheme of things whether Mr. Heisman would have testified at the criminal trial at the penalty phase or if this evidence were to have come in only through a mental health expert. In terms of Mr. Heisman's thinking on this point – I think Judge Fischer is asking you to tick these things off. One is to protect the grandmother. What else? Secondly, that – I would say that that is probably the most important aspect. Also, there was a history of family secrecy, a code of silence, if you will, Your Honor, that existed among all the family members. And I know Judge Walker talked about that as well. Those are the two, I think, key elements that undergird Judge Walker's finding that Mr. Heisman would not have disclosed this. Now, additionally, we have no evidence anywhere of any third party ever – Okay. But just to round up my question, you said that Dr. – Judge Walker had Dr. Berg in front of him, so he saw him testify. So of your list, I'm looking at ER 53 and 54. That's why I asked the question. Where does Judge Walker say that he, based on his evaluation of Dr. Berg, that his credibility is doubtful? He gave – Judge Walker gave reasons why he didn't accept the notion. He said it would be virtually impossible that anybody would have elicited that. But what about Dr. Berg appearing before him influenced that finding, that we know from whatever Judge Walker said? There's nothing specifically stated that I find Dr. Berg not to be a credible witness. However, the term that Judge Walker uses, that Dr. Berg's conclusion is, quote, and provide the court with the citation to where that is in Judge Walker's opinion. And Dr. Berg was basically forced to admit that Heisman would have been aware that anything that he – anything that would have been admitted at trial regarding abuse would have become known to the rest of the family, something that he wanted to avoid. Dr. Berg, as I said, I think going to any credibility is the fact that Dr. Berg has never had an opportunity to fully evaluate Mr. Heisman. He says that he could have coaxed and teased these things out of him. Well, one of the things that is troublesome to me is that we're – you said it poisoned the well. But the fact is a mitigation investigator actually, quote, teased it out. Now, I understand that it's 10 years later and his circumstances have changed and the like. But the fact is, is that someone questioning him got him to reveal it. Now, I don't see that Judge Walker addresses that. I can put flesh around the theory, but I'm looking – if we're talking about reviewing Judge Walker's finding for clear error, I have to look to what he decided. With all due respect, Your Honor, I would disagree with what you have just said about Judge Walker. Okay. Because Judge Walker was aware of the fact that Mr. Heisman would not disclose. And the key fact in 1990 was that his grandmother had passed away. She was no longer a factor. He had no fear of her ever learning of this. And also, if one looks at the materials that we submitted of Dr. Martel's evaluation, Mr. Heisman also indicates to Dr. Martel that, you know, gee, I've had a chance to sit back and think about all of this, these many, many years that I've been on death row. That should – that is not a very surprising factor. I mean – Counsel. Yes, sir. You know, I know you're trying to respond to Judge Fisher, but he's specifically directing you to – actually, it's a record 53 and 54, where Judge Walker expressly went through and explained why he thought it was highly speculative that any of this would have come out had there been an investigation, any kind of a psychological evaluation. He goes at some length in this to explain why – he didn't use the words. There wasn't a reasonable probability it would have come out. He said that Berg had never – he said Berg talked about how he probably would have got him to say it, and yet he'd never talked to him before. He talked about Leslie Leibovitz, who was retained by the petitioner, and stated the petitioner would not have readily disclosed his grandfather's sexual abuse. He talked about Dr. J. Jackman, a psychiatrist retained by the petitioner, and noted that even when asked about his family and therapeutic interviews prior to 1990, the petitioner did not discuss any abuse. He talked about this code of silence. Dr. J. Martell, also – I guess he was retained by you folks – he would reveal the abuse to anyone. Even Dr. Berg, according to Judge Walker, agreed that it was less likely the person in a secretive family would divulge abuse by another family member, and Martell, Leibovitz, and Jackman all concurred that men are less likely to discuss sexual abuse. See how easy the answer was? You could have gone to the opinion. Yeah, exactly. But my point is – the question I would like to ask you, given what Walker said, and given the standard of whether this was a – whether there was a reasonable probability that this would have been discovered, why was Judge Walker wrong? I mean, how do you quantify what is a reasonable probability, given all of this evidence that he looked at that suggests that there's really very little likelihood that Heisman would have said anything in 1980? Can you answer that? Well, if I understand Your Honor's question correctly, a reasonable probability would be something where it would be reasonable to – for the Court to conclude that Dr. Berg could have drawn this out. But if we're looking at the reasonable probability of having affected the outcome, the Strickland reasonable probability question, then we look at Dr. – or excuse me, Judge Walker's factual finding that this information would not reasonably have come to light. Therefore, it supports – Is it a different standard than the Strickland standard? If so, what is the standard? Well, I think it's as Judge Silverman pointed out in his colloquy with Mr. Sattras about what is a factual finding versus what is a legal conclusion. The fact that it's highly speculative that Dr. Berg would have been able to develop the evidence that Mr. Sattras claims he would have developed. It's removing it several times from the beginning, but ultimately isn't the standard. Doesn't that go in? Doesn't that inform whether there was a reasonable probability that this would have happened, that there would have been prejudice, basically? Absolutely, Your Honor. And if I have said anything to the Court to indicate that somehow that's not what our position is, I apologize. How do you quantify this thing? I mean, does there have to be a 50 percent chance you would find it? Is it a 10 percent chance? Is it a 2 percent chance? How do we as a court of appeal put flesh onto what the Supreme Court said in the prejudice prong of Strickland? What are we looking at? Well, so far as evidentiary points, Your Honor, habeas corpus law is quite clear that evidentiary facts, the burden of proof, first of all, is on Petitioner, and that burden of proof is by a preponderance of the evidence. The Supreme Court, however, has said that on a reasonable probability of a different outcome, that it is not a preponderance of the evidence standard. The standard, rather, is that this court must have confidence in the ultimate outcome of the trial. That's how they've defined a reasonable probability. In terms of Strickland, it's the same reasonable probability test that the Supreme Court applies. Well, let me ask you this. Suppose we find that Judge Walker was clearly erroneous in his finding about what Dr. Berg would have been able to come up with. Okay, let's suppose he's wrong. Then Judge Walker says even if this had been presented, it wouldn't have changed, he wouldn't have gotten anything other than death, basically, is what? Yes, Your Honor. Why is that a correct finding? Well, there are several reasons for that. Number one, Your Honor, it would have opened the door to the evidence that Mr. Keep wanted to keep out that was contained within the evaluations concerning Mr. Heisman being a mentally disordered sexual offender. Wait a minute, this is on penalty. I'm sorry, Your Honor? This is on penalty. Yes, sir. Okay, and you put on or the prosecution put on all of the victims of rape. So what is it about what you're just citing would have opened the door to what? Well, if I understood Judge Silverman's question correctly, it's presupposing that Dr. Berg would have testified to the mental health effects. You didn't put on any mental health evidence at the penalty phase. So you're saying that had he offered a mental health mitigation, you would have offered mental health aggravation, if I understand what you're saying. Yes, Your Honor. In terms of cross-examination, as well as we could have offered Dr. Martel's testimony to get into all of these other records. What you did put on were the victims of these prior rapes. If I'm hearing you right, what you would have put on is basically that he's a sociopath. Yes, Your Honor. Essentially what the proof would have shown is that he was predisposed to commit sexual offenses, that he was a danger to others, he was particularly unsophisticated young women, that he was unamenable to treatment, given his refusal to acknowledge responsibility for his crimes. And that stuff did not come in in aggravation, is that right? Affirmative. But then, as the prosecutor argued in closing, there was no evidence based on all of the evidence that was put on about his violent behavior, his abuse of women, his lack of respect for the criminal justice system. And there was no evidence, as I understand the prosecutor explicitly argued, no medical evidence to justify any of this, no psychological evidence to show anything wrong with him. There was no mental disorder. There was no evidence from doctors or psychiatrists. So I'm having a little trouble understanding why you think that he would have been better off with the jury to have unexplained all of his abusive behavior of women and that there was some downside to having an explanation about his horrific abuse that would have gone directly to the issue of his mentally, his diagnosis as a sex offender. I mean, I'm really having trouble with that. When unrebutted before the jury was the fact that he was a terrible guy, all of the things that whatever his motivations were, the outcome was he was a terrible guy. I think, Your Honor, it goes to the initial thing I said at the outset of my argument, and that goes to the type of crime that was in front of the jury. And here we have basically a hit, a cold-blooded, methodically planned out execution where Mr. Heisman's characteristics for manipulation, which are part of those MDSO evaluations, shows he manipulates unsophisticated women to assist. But counsel, if that were the focus of the penalty trial, that's fine. But it wasn't just the focus. The focus was enhanced by the extremely compelling testimony of a series of rape victims, which the prosecution put on, presumably because it believed this would persuade the jury to go beyond what you just characterized as the methodical, premeditated killing of an innocent person. So the prosecution chose, as its aggravation evidence, to put on the history of the rapes. Okay. Now, the Berg testimony and the so-called bombshell would have directly related to the rapes. Whether it would have persuaded a juror, any juror, it only takes one, that that explains not only his diminishes or mitigates the rape conduct, but would have also transferred over to the crime of conviction. That is a difficult question. But the prosecution seemed to think it was relevant, that is that the rapes were relevant to the death penalty, notwithstanding the cold and calculating manner in which he carried it out. So I'm having trouble understanding any downside of putting in this evidence about the abuse he suffered as a child. As I said before, Your Honor, it would open the door to the additional evidence about his mental makeup that I think is highly damning. And I think most, any juror- What about it would be more aggravating that was already put in and wouldn't be at least met by the fact that he was raped and sodomized by his grandfather? I think the fact that, in particular, one of the key facts would be that he's not amenable to any kind of treatment. He is violent. He was violent then. He is, when he was carrying out each one of those rapes- So that's why- He's violent. I'm sorry. That's why a juror would put him to death instead of life in prison without- Yes. Yes, Your Honor. And I think another point, you talked about what the prosecution did. And I think the prosecution did put on proper evidence at the penalty phase. I would also mention to the court that the prosecutor did not specifically argue for death. He basically argued to the jury, your choices are death or LWOP. Make the right decision. That was the thrust of his argument. And the jury came to that conclusion based on just the evidence that it had. And I think that if you open the door to the additional damning evidence that was in these evaluations that Mr. Keep wanted to keep out, was successful in keeping out, football terminology, that would be like a 15 yards for piling on. Because it just reinforces the fact that- What exactly did not come in that would have come in? I'm having a- I want to get my- Yes, Your Honor. That he was designated, he was given this designation as basically a non-amenable- Yes, Your Honor. It did not come in that he was a mentally disordered sex offender. Basically, today, what we would classify as a habitual sexual predator. Anything else? Yes, Your Honor. That he was a danger to others, particularly unsophisticated young women. That he was unamenable to treatment because he refused to acknowledge responsibility for his crimes. That he had antisocial- that he had been diagnosed as antisocial personality disorder, which- Now, that did not come in but would have come in. Yes, Your Honor. His diagnosis of antisocial personality. As well as having sexual deviation, although I don't think that's much of a stretch for the jury to come to that particular conclusion. That he was highly manipulative with serious psychosocial features. That he had immature character with sociopathic features. And that he possessed passive-aggressive personality with sexual deviation, power, and rape. Okay, now let's go back to your point about the prosecutor left to the jury. At ER 1202 in his closing, he says, When Mr. Keefe stands up here and tries to appeal to your sympathies, when he talks to you about the defendant's mother, and when he pleads with you for Lee Heisman's life, when he asks you not to give him the punishment that you know he deserves, I simply ask you to remember the faces that you've seen in this courtroom and cites the rape victims. Now, you're saying he wasn't- he was taking sort of an agnostic position with the jury? And wasn't invoking the very kind of testimony they'd heard, unrebutted by any evidence of his, as he said previously? I fail to see how it provides him with any excuse for his behavior. Is anywhere a factor in mitigation? Anything that balances the scales on his behalf? Did you hear any medical testimony, evidence from any doctor that there is something medically wrong with him? No. Did the defense call any one of the many psychiatrists who have seen the defendant over the years? No, not one. Did you hear any psychiatric evidence that the defendant is somehow incapable of controlling his behavior? Not just not willing to control his behavior, but he's not capable of it? No, because all any psychiatrist would tell you is what you've already heard from all the rest of the witnesses. He's simply a selfish, exploitative, manipulative individual who doesn't give a damn about anybody but Lee Heisman. And you think that the evidence of the grandfather raping him as a child would have no impact on a jury? Absolutely, Your Honor, because there is nothing, and there is no evidence in the record. So not just what you think, that's what Judge Walker thinks too, is that right? Yes, Your Honor. At 57? Yes, Your Honor. And I think any reasonable juror, and when you mention one juror being a holdout, the standard is a reasonable juror. And I don't think any reasonable juror would have, Your Honor. Is Judge Walker's finding, let me read you this, and I'm not clear whether it's a legal, factual, or mixed question finding. Let me read it to you. Any sympathy that the evidence might possibly have engendered in the jury would not have been enough to overcome the strong case in aggravation. And, given the circumstances of the crime, would not have persuaded the jury to be lenient. Well, right, wrong, or otherwise, is that a factual finding, a conclusion of law, or a mixed finding? I would submit, Your Honor, that that is a mixed finding. So that would mean, you would say we review that de novo, then? If it's a factual finding, we review it for clear error. If it's a mixed finding, I believe we review it for clear error. I would say that you review that, yes, Your Honor, I think that you would review that de novo. There are factual, certain factual findings in there. But I think it's essentially what Judge Walker is doing is a prejudice analysis. As I hear those words, that's immediately what springs to mind in that case. There's nothing that shows in any of this evidence that Dr. Berg speculates he could have developed any reason for Mr. Heisman's cold, premeditated murder of Nancy Lugosi. We do know that Mr. Heisman told people the reason he murdered Nancy Lugosi, I don't want to go back to prison. That does not sell, that would not sell well with any juror. And that's the main motivation for this crime. It was not a murder that was committed in the course of a perpetration of a sexual offense. This is a murder that occurred on 1 November of 1979. And Ms. Lugosi's rape, if I remember correctly, was either on 22 or 29 July of 1979. As I said at the outset, Your Honor, this court sagely noted in Allen v. Woodford that the killing of a witness, which is what we have here, the cold-blooded, premeditated killing of a witness, strikes at the core of our judicial system. It's been 30 and a half years since Mr. Heisman's judgment was pronounced. He was provided a fair trial, competent counsel, as Judge Walker found, and we would ask that this court affirm Judge Walker's decision. Thank you. Thank you. The closing argument that the Court quoted, Judge Fischer quoted there, was the prosecution's narrative. And what makes the prejudice here is there was no counter-narrative presented by the defense. There was no counter-story. There was no changing of the picture. And yet you could have had a completely different picture presented of Lee Heisman. Counsel, can I ask you this hypothetical? Let's assume for a moment that Mr. Heisman, we knew for a certainty that he would not have revealed this. And let's assume for a moment that we knew that no matter what investigation the lawyers did, that that would not have been revealed in 1980. Let's later assume that Mr. Heisman then reveals it. Even though, and I may be inclined to agree, the jury may very well have been impacted, how much we don't know, but certainly been impacted by this testimony. Can we get there if we find that the lawyers did everything according to the standard, or even if they didn't, that because they could not have found it, the testimony would not have been available in 1980? Okay. Kind of putting ineffective assistance of counsel aside. Okay. In other words, what I'm saying is we have to go through Strickland to get to the problem. In other words, in an ideal world, of course you're going to want to present this kind of testimony to the jury, particularly in a conclusion, but we have to go through the IAC. And that's at least my problem, is did they commit, did they vary from the standard they had to comply with? Let's assume for a moment that they did. I'm struggling most with the prejudice problem because of all of the indicia that suggest that they would never have discovered this in 1980. So that's why I ask you the hypothetical. Don't we have to go through the IAC to get to this in the first place? I would say generally, yes. But on the other hand, there is a cruel and unusual punishment component, and the cruel and unusual punishment component says that a person cannot be condemned to death where the jury has been left without the advantage or the ability of taking into consideration mitigating. And I think you did argue the Eighth Amendment issue, but I don't know whether that was a certified issue here. No, it was kind of collapsed, I think. I don't remember it being a certified issue. So we really get back again to the IAC problem, don't we? It's certified. I think it's certified in the sense of it was a Sixth Amendment and Eighth Amendment issue. And the argument has been made that, you know, the bottom line on this is the jury condemned to death somebody who was not Mr. Heisman because they were bereft of the mitigating evidence. Well, that takes us back to maybe the first question Judge Fisher asked when he started. And the finding that I just read from Judge Walker where he says even if this stuff were to come in, it wouldn't have changed the result. And he said, this is the point Judge Fisher was raising before, Dr. Liebowitz admitted there is no known correlation between childhood sex abuse and the murder of a witness in adulthood. Well, but there is an absurdity. I mean, your evidence would explain why he is a rapist. I'll give you that. Okay. It doesn't explain why he would months later go and kill the woman who's going to testify against him. Yes, that would have been explained too. Like Dr. Liebowitz said, the evidence shows that when you see – What's the mitigating explanation for that? That it so misshaped his person – I understand it's misshaped. He's a sociopath. And behavior. Yeah. That it led to him becoming violent. He had all of the features in his life growing up that created risk factors for violence. And it came out it's always – But the testimony was there's no correlation between that and killing the witness. There's no exact correlation. Well, it doesn't say there's a little bit of a correlation. There's no correlation as far as I can tell. As Dr. Liebowitz says, you don't have even a field of studies. Well, then if you don't have it, you don't have it. But you do have – I mean, all of this Court's cases and the Supreme Court cases, this is exactly the kind of evidence that does reduce culpability for the violent capital offense. I mean, you can create any kind of scenario where somebody takes somebody to the desert and tortures them and strangles them and kills them, and there's no correlation there that because you suffered these kinds of horrible upbringing that you're going to end up going to a desert and strangling somebody. But this is a discrete crime where the motive is to keep a witness from testifying in a couple of weeks. It's hard for me to see a correlation between sex abuse and that kind of crime when the guy says, I don't want to go to prison. Well, then let's step back a moment because the courts have also said when you have this kind of heartfelt, sympathetic evidence, it doesn't even necessarily have to relate to the capital offense itself. But we do have it centrally relating to the aggravating evidence. And it's hard to see this capital crime as anything other than the culmination of his sexual violence towards women. When we're talking about reasonable probabilities, and I know it's hard to get a handle on that because the Court is kind of amorphous about it. We know it's less than, more than likely. And what it is, is something that undermines the reliability of the verdict here. And the verdict was not reliable here because the jury missed almost the entire traumatic life history. As we said, from birth to maturity, that explained who he was and largely explained, fundamentally shaped. But does that address Judge Silverman's question of the correlation between murder in this case and the kind of trauma that he experienced from his grandfather? Well, I think it does because that explains who he was as a person and does explain why he would then actually go to the point of committing the capital murder. Because he had been subject to exactly the kinds of abuses. As Dr. Leawood said, extreme on every level. That so misshapes a person. That so makes it likely he's going to engage in criminal violence of a capital nature. And that's exactly the kind of classic mitigating evidence that most acts to cause a jury to find. I mean, the expert for the prosecution itself said Mr. Heisman was a very sympathetic character. In a lot of ways, Jack Shatt can be looked at as the bad guy in this case. And it is a lot easier to put the focus on that. And that's exactly what the penalty counsel should have done. And you have the evidence from all the experienced capital defense counsel that was quoted in the briefs. Where you look, you trace back the anger. You look to where the motivation, where the impulse for the violence comes from. And ultimately, it comes back to the home. And if counsel had done that in this case, there would have been a vastly different penalty phase. The only change in the ten years difference, in terms of getting back to the question now of, you know, would Mr. Heisman have disclosed to Dr. Byrd in 1980, out of all of those recitations by the district court judge, those were all in existence in 1980. I mean, in 1980 and 1990. Well, there was a big change in his circumstance. He's lost his appeal. He's lost his appeal. And he's getting closer and closer to getting executed. He's facing, at the time, death prosecution. I know, but it's getting more imminent. But there's no suggestion. He had an entirely different defense when he was in 1980. He had a flaky alibi, and he claimed he'd been framed in these prior rapes. Well, now things didn't unfold well for him. And after ten years of being on death row, and he loses his appeal at the California Supreme Court, things are looking a little different to him. Well, the district court did find that, and there was no evidence that really supported that notion. I mean, those are just historical facts. Yeah. You know, the story comes out after he loses his appeal. But the story comes out the first time that he's approached in the exact way Dr. Byrd said he would have approached him in 1980. So, again, we do get the probabilities that undermine verdict. There's no certainty either way. And it may be true that there's some kind of reasonable probability, based on what you just said, Your Honor, for example, that he would not have disclosed. But that does not discount the reasonable probability that he would have. All right. Thank you. Thank you. I think I speak for my colleagues when I say this is one of the best brief cases we've seen in a long time, and I can congratulate you on a terrific job. It's good to hear that.  Thank you. And good argument on both sides. Thank you. The case, argued, is submitted. Thank you, gentlemen. All rise. Court is adjourned.
judges: Silverman, Fisher, Smith M.